IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                                                          Crim. No. 2:20-cr-20148-SHL

KATRINA ROBINSON,

      Defendant.

---

## MOTION IN LIMINE

---

COMES NOW the United States of America, by and through Joseph C. Murphy, Jr., United States Attorney, and Christopher E. Cotten, Assistant United States Attorney for the Western District of Tennessee, and respectfully moves that this Honorable Court exclude any evidence, testimony (including expert testimony), or argument of the following from the trial in the above-styled case on the grounds that it is irrelevant under Fed. R. Evid. 401, or, in the alternative, that its relevance is substantially outweighed by the risk of confusing the issues or misleading the jury under Fed. R. Evid. 403:

1.     That because of her position and interest in The Healthcare Institute, the defendant was free to use its assets and distribute them to herself and for her own benefit as she saw fit;

2.     That she therefore could not be guilty of theft, embezzlement, or misappropriation of the assets of The Healthcare Institute because of the transactions charged in the indictment;

3.     That she was ignorant of, or mistaken about, the law that applies to her ability to use assets of the Healthcare Institute and distribute them to herself for her own benefit.

In further support of this motion, the United States submits the following memorandum of fact and law:

---

## MEMORANDUM IN SUPPORT OF MOTION IN LIMINE

---

### STATEMENT OF FACTS

Counts 1-4 of the superseding indictment charge the defendant with stealing property worth at least $5,000 owned by, and under the custody and control of an organization receiving in excess of $10,000 in federal benefits during a one-year period. That organization is The Healthcare Institute (THI).

According to public records maintained by the Tennessee Secretary of State, THI was formed on January 31, 2015 as a member-managed Tennessee limited liability company (LLC) with Katrina Robinson as the sole member. Exhibit 1, pp.MIL002-004: Document Receipt, Articles of Organization. The articles contain no provisions concerning the distribution of the LLC's assets, and no separate operating agreement was filed. *Id.*

On October 23, 2017, the company was converted to a Tennessee for-profit corporation and the name changed from "The Healthcare Institute LLC" to "The Healthcare Institute, Inc." *Id.* at MIL005-008: Certificate of Conversion, Charter.

In her motion to dismiss counts Count 3 and 4 of the indictment, the defendant argued that as the CEO, instructor, and sole shareholder of THI, she "singularly operated the affairs of THI and was likewise, the sole beneficiary of the company's profits." (RE-78, PageID 288).

Then, on July 30, 2021, in a lengthy interview with online media outlet *MLK 50*, the defendant's lead counsel elaborated on this purported defense:

There is an accusation in the indictment that Ms. Robinson stole money from her own company.

Let's be clear, until almost the end of 2017, it was (a limited liability company) where she was the sole owner. It later was turned into a corporation, of which she was the sole shareholder. She was chairman; there was no board; she was the board, and she was the CEO. And as the company had profits, like any other owner – Jeff Bezos with Amazon, Bill Gates with Microsoft – as profits are made, the owner gets to spend them. That's exactly what Ms. Robinson did.

. . .

What the facts will show is that tuition was paid to the school, and as such, Katrina Robinson was free to take those profits.

She also had income streams from other sources, including private pay, and from other grants . . . Those were profits to a company, just like Tesla, just like any other company, and the owner of the company gets to spend those profits.

But what we have here is that the government unfairly suggests that somehow this was illegal and that somehow the grant would not allow this. And we expect the proof to be clear that the grant put no limitations on how Ms. Robinson or her company was to spend its profits.

Exhibit 2, pp.MIL013-014: Media Article.

Finally, in her expert disclosures, she gave notice of her intent to present the following:

Ms. Robinson may introduce testimony from Ericka Hayes, a witness with specialized knowledge and experience in Accounting. Ms. Hayes is a Certified Public Accountant and Small Business Consultant. Attached is her Curriculum Vitae which details her qualifications and background.

Ms. Hayes may present testimony on accounting terminology, principles, procedures, methods, practices, corporate governance. As a part of her testimony, Ms. Hayes may use or refer to any document produced or offered as an exhibit. She may also testify to additional opinions in rebuttal to opinion testimony presented by the Government.

Ms. Robinson may also introduce testimony from Chasity Grice, Attorney at Law, who is familiar with the business structure

and formation of the Tennessee Healthcare Institute. Attorney Grice has a law degree with a concentration in transactional tax. She has practiced law for fourteen years and provided legal services in the states of Texas and Tennessee in the areas of business formation and taxation.

Attorney Grice may provide testimony regarding corporate structure, corporate governance, legal liability, business practices, and taxation. As a part of her testimony, Attorney Grice may use or refer to any document produced or offered as an exhibit. She may also testify to additional opinions in rebuttal to opinion testimony presented by the Government.

Exhibit 3, pp.MIL024-025: Expert Disclosure.

## ARGUMENT

Based on the defendant's arguments in previous motions, her attorney's statements to the media, and her expert disclosures, it appears that the defendant is going to assert as a defense that as CEO, sole member, and later shareholder, of THI, she was free to use the company's assets as she chose and convert them to her own benefit as she saw fit. Thus, her argument appears to be, the transactions charged in the indictment could not have constituted theft, embezzlement, or misappropriation under 18 U.S.C. § 666.

However, because this is a defense that the law of Tennessee, where THI was formed, does not recognize, any evidence, testimony, or argument going to support it is irrelevant and/or potentially confusing to the jury, and should not be allowed by the Court.

**A. Relevance and Admissibility under Fed. R. Evid. 401, 402, and 403.**

Fed. R. Evid. 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." In a criminal case, a fact is "of consequence" if it makes it more or less likely that the defendant committed the charged conduct. *United States v. Hazelwood*, 979 F.3d 398, 409 (6th Cir. 2020) (quoting *Old Chief v. United States*, 519 U.S. 172,

179 (1997)). Fed. R.Evid. 402 provides that such relevant evidence is generally admissible.

An exception is found at Fed. R.Evid. 403, which provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Courts have excluded evidence under Rule 403 on the grounds of confusing the issues or misleading a jury where it goes to a defense that does not exist, that the court has ruled inadmissible, or a defense that is inapplicable, or is likely to confuse the jury as to a defense that is applicable. *See, e.g., United States v. Kahn*, 711 F.Supp.2d 9, 12 (D.D.C. 2010) (expert's testimony that defendant's beliefs were typical of others who had adopted non-traditional views about taxation excluded under Rule 403 in tax evasion case because good faith defense was subjective and the beliefs of others thus irrelevant and potentially confusing to the jury); *United States v. Kinsella*, 545 F.Supp.2d 148, 155 (D.Me. 2008) (attorney's affidavit in failure to appear case excluded where it went to a defense that the court had already ruled inadmissible); *United States v. Eff*, 461 F.Supp.2d 529, 535-36 (E.D. Tex. 2006) (expert testimony on defendant's medical condition that was only admissible on the issue of insanity excluded where it could improperly suggest a diminished capacity defense that did not exist). *See also Pittman v. County of Madison, Ill.*, 970 F.3d 823, 829-30 (7th Cir. 2020) (testimony that prison guards in § 1983 action acted with deliberate indifference toward the plaintiff excluded under Rule 403 on grounds of juror confusion because it misstated the applicable standard of care).

Here, for the following reasons, the defendant wishes to present a defense based on a principle that is not recognized in applicable law. Thus, any evidence and/or argument in support of that defense would either be irrelevant, or else any relevance would be substantially outweighed by the risk of confusing the issues or misleading the jury.

**B.  Tennessee on Limited Liability Companies.**

THI was initially formed as a Tennessee limited liability company, or LLC. "Under Tennessee law, an LLC, like a corporation, is treated as if it is a separate legal person distinct from its owners and officers." *Last Minute Cuts, LLC v. Biddle*, 2019 WL 6222280, at *2 (W.D. Tenn. Oct. 18, 2019) (citing Tenn. Code Ann. § 48-249-104 setting forth the purposes and powers of an LLC). *See also*, *Collier v. Greenbrier Developers, LLC*, 358 S.W.3d 195, 200 (Tenn. App. 2009) ("a limited liability company has an existence separate from its members and managers") (quoting Am.Jur.2d Limited Liability Companies § 1) (internal quotation marks omitted).

To enforce this distinction, Tennessee statutory law expressly provides that "[a] membership interest in an LLC is personal property. A member has no interest in specific LLC property. All property transferred to or acquired by an LLC is property of the LLC itself." Tenn. Code Ann. § 48-215-101(a).  This is true even if the LLC has but one member. *See Collier* at 200-201 (quoting § 48-215-101(a) to hold that because single member of LLC did not own the LLC's property, he was not automatically in privity with the LLC); *Barton v. Barton*, 2020 WL 6580562, at *5 (Tenn. App. Nov. 10, 2020) (citing § 48-215-101(a) to hold that property held by LLC could not constitute marital property in a divorce even though husband owned 100% interest in LLC); and, *In re Burgess*, 63 Collier Bankr..Cas 2d 1266, 2010 WL 1686929, at *1 (M.D. Tenn. Bankr. Apr. 26, 2010) (quoting § 48-215-101(a) to hold that LLC's assets could not be part of bankruptcy estate even though debtor was sole member).

Accordingly, Tenn. Code Ann. § 48-249-43(b)(1) provides that members of a member-managed LLC are "[t]o account to the LLC and to hold as trustee for it any property, profit or benefit derived by the member in the conduct or winding up of the LLC's business, or derived from a use by the member of the LLC's property, including the appropriation of any opportunity of the LLC".  A member of an LLC also has the duty not to act as a person having an adverse

interest to the LLC, to engage in good faith and fair dealing in conducting the LLC's business, and to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of the law. Tenn. Code Ann. § 48-249-403 (b)(2)-(3) and (c). These fiduciary duties are owed to the LLC, and may not be extinguished by members' conduct. *Lascassas Land Co., LLC v. Allen*, 2018 WL 1733449, at *7 (Tenn. App. Apr. 10, 2018).

Moreover, Tennessee statute also places limitations on distributions of an LLC's assets. A "distribution" is defined as:

> a direct or indirect transfer of money or other property (except its own membership interests) with or without consideration, or an incurrence of indebtedness, (whether directly or indirectly, including through a guaranty) by an LLC to or for the benefit of any of its members in respect of membership interests. A distribution may be in the form of an interim distribution or a liquidation distribution; a purchase, redemption, or other acquisition of its membership interest; a distribution of indebtedness (which includes the incurrence of indebtedness, whether directly or indirectly, including through a guaranty for the benefit of members) or otherwise.

Tenn. Code Ann. § 48-202-101(15). However, Tennessee law then limits interim distributions of LLC assets, stating that, "Except as provided in or through the articles or operating agreement or by a majority vote of its members, a member is entitled to receive distributions before the LLC's termination only as specified in the articles or operating agreement."

Thus, when THI was an LLC, the defendant did not own the company's assets, but held them in trust for the company under a fiduciary duty to act in its best interests. She also did not have unfettered discretion to distribute the company's assets to herself.

### C.  Tennessee Law on Corporations.

This relationship between the defendant and THI's assets did not materially change when the company was converted from an LLC to a corporation. "A corporation is a distinct legal entity that exists separately from its shareholders, officers, and directors."  *Gordon v. Greenview Hosp.*,

300 S.W.3d 635, 650 (Tenn. 2009). "In Tennessee, '[e]ven if one stockholder holds all of the stock in a corporation, the corporation and that single stockholder remain "distinct legal entities."'" *Taylor v. Thomas*, 2013 WL 228033 at *6 (W.D. Tenn. Jan. 22, 2013) (quoting *Rogers v. Louisville Land Co.* 367 S.W.3d 196, 216 (Tenn. 2012) and *Hadden v. City of Gatlinburg*, 746 S.W.2d 687, 689 (Tenn. 1988)). "[W]here parties have deliberately undertaken to do business in corporate form, for tax purposes, accounting and other reasons, they must be held to the corporate form and they cannot shunt aside at their convenience legal entities and the legal aspects thereof." *Taylor* at *6 (quoting *Hadden* at 690) (internal quotation marks omitted; brackets in *Taylor*).

As a consequence, "[n]ormally stock in a corporation represents an ownership interest in a going business organization; the stockholders do not own the corporation's property." *Owens v. Comm'r of Internal Revenue*, 568 F.2d 1233, 1238 (6th Cir. 1977). "The corporation is a person and its ownership is a nonconductor that makes it impossible to attribute an interest in its property to its members." *Id.* at 1239 (quoting *Klein v. Board of Tax Supervisors of Jefferson Co., Ky.*, 282 U.S. 19, 24 (1930)) (internal quotation marks omitted).

As with LLCs, Tennessee statute governs, and places restrictions on, distributions of corporate assets. For a Tennessee for-profit corporation, "distribution" means:

> a direct or indirect transfer of money or other property (except its own shares) or incurrence of indebtedness (whether directly or indirectly, including through a guaranty) by a corporation or for the benefit of its shareholders in respect to any of its shares. A distribution may be in the form of a declaration or payment of a dividend; a purchase, redemption, or other acquisition of shares; a distribution of indebtedness (which includes the incurrence of indebtedness for the benefit of the shareholders); or otherwise.

Tenn. Code Ann. § 48-11-201(9).

Tenn. Code Ann. § 48-16-401 governs distributions of corporate assets to shareholders. It vests the authority to authorize distributions in the board of directors (§ 401(a)); and provides that

8

no distribution may be made if it will make the corporation insolvent or unable to pay its debts. § 401(c). Further, it charges the board of directors with making the determination that a distribution will not violate § 401(c) by using either financial statements prepared on the basis of reasonable accounting principles or on a fair valuation that is reasonable under the circumstances. *Id.* at § 401(d).

**D.  Defendant's asserted defense is not recognized in applicable law.**

The overall import of her counsel's remarks is that the defendant wishes to assert as a defense that she had unfettered discretion to make the wide array of direct withdrawals from THI's operating account for her own personal benefit set forth in the indictment as "profit taking." Put another way, the defendant wishes to argue, in essence, that she cannot be guilty of stealing from herself.

Tennessee law as it applies to THI makes it clear that there is no such defense. THI, both as an LLC and as a corporation, was at all times a separate and distinct legal person. THI's assets were not the defendant's own personal property; she held them in trust for the company. "In exchange, with few exceptions [she] '[did] not have any personal obligation and is not otherwise personally liable for the acts, debts, liabilities or obligations'" of THI. *Burgess* at *1 (quoting Tenn. Code Ann. 48-217-101(a)(1).

However, in order to enjoy the benefits of limited liability that LLC and corporate status afforded her, she was obliged by law to abide by the distinction of THI as a separate legal person. And as a matter of law, she was not at liberty to ignore that distinction as she saw fit, using direct withdrawals of THI operating funds to pay for, among many other things, her wedding, honeymoon, and divorce; equipment and operating expenses for completely unrelated businesses for herself and her children; and a variety of other personal items. She was no more authorized to do that than Jeff Bezos or Bill Gates – the two corporate CEOs cited by defense counsel as

analogous examples – would be to make direct withdrawals from their companies' operating accounts for their own benefit.

The fact that she was the sole member or shareholder of THI did not relieve her of her obligations under state law, and cannot insulate her from charges that she stole from what is legally an entirely distinct entity. Accordingly, testimony, evidence, or argument to the contrary is irrelevant and/or excludable under Fed. R. Evid. 403 and should not be permitted.

### E.  Ignorance and Mistake of Law

The defendant should also not be permitted to assert as a defense that she did not know that she could not treat THI's assets as her own or that she mistakenly believed that she could. It is axiomatic in criminal law that "ignorance of the law is no defense." *United States v. Fortner*, 943 F.3d 1007, 1011 (6th Cir. 2019). Likewise, "a fundamental proposition in American criminal law is that a defendant's mistake of law is not a defense." *United States v. Javaherpour*, 78 F.App'x 452, 455 (6th Cir. 2003) (citing *Cheek v. United States*, 498 U.S. 192, 199 (1991)). As the director of first an LLC then a corporation, the defendant was charged with operating within the boundaries of the laws governing those entities, and she cannot claim ignorance or mistake of those laws as a defense.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court exclude testimony, evidence, and argument as set forth herein.

Respectfully submitted,

JOSEPH C. MURPHY, JR.
Acting United States Attorney


By:     /s Christopher E. Cotten
CHRISTOPHER E. COTTEN

/s Scott P. Smith
SCOTT P. SMITH

/s Naya Bedini
NAYA BEDINI
Assistant United States Attorneys
800 Federal Building
Memphis, Tennessee 38103
(901) 544-4231


## CERTIFICATE OF SERVICE

I, Christopher E. Cotten, Assistant United States Attorney for the Western District of Tennessee, hereby certify that a copy of the foregoing motion has been sent via the Court's electronic filing system to the attorneys for the defendant.

This 12th day of August, 2021.

/s Christopher E. Cotten
CHRISTOPHER E. COTTEN
Assistant United States Attorney

11