IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | )   Case No. 2:20-cr-20148-SHL |
| v. | ) |
| | ) |
| KATRINA ROBINSON, | ) |
| | ) |
| Defendant. | ) |

---

**UNITED STATES' MOTION TO TRANSFER CASE TO EASTERN DIVISION OF THE WESTERN DISTRICT OF TENENSSEE, OR ALTERNATIVELY TO EXCLUDE SHELBY COUNTY RESIDENTS FROM JURY POOL**

---

The United States, through the undersigned counsel, moves either to transfer this case to the Eastern Division of the Western District of Tennessee, or in the alternative, to exclude Shelby County residents from the prospective jury pool.  It makes this request because of (a) the defendant's recent statements to local Memphis media, which include inflammatory remarks alleging the United States is prosecuting this case for improper reasons, and (b) the defendant's encouragement of supporters' threats to "pack the courtroom" and "shut the entire city down" during the week of the defendant's trial.  In support of this motion, the United States respectfully submits the following:

**I. FACTS**

The defendant is a sitting Tennessee State Senator representing District 33 in Memphis. She was charged on July 24, 2020 with theft and embezzlement involving government programs and wire fraud.  She was arraigned July 29, 2020.  The Court set this case for trial on September 13, 2021.  Since the case was charged, local and national media have taken an interest in the

case.  And until recently, the defendant made no comment on the case.  But within the last month, as trial approaches, the defendant has begun a public-relations campaign focusing on local Shelby County media.  During that campaign, the defendant has repeatedly accused the United States of racial animus in the investigation and prosecution of her case, advanced her version of the facts of the case, and sought to bolster her character and credibility.  Specifically, the defendant has made inflammatory statements designed to evoke sympathy, try her case in the media, and influence the jury pool – particularly Memphis-area jurors.

First, in a July 30, 2021 interview published on MLK50.com, the defendant, accompanied by her lead counsel, asserted that this case "is both a political and racist attack designed to mar the credibility of Black leadership."  Exhibit 1, Carrington J. Tatum, *State Sen. Katrina Robinson calls federal charges a 'political and racist attack,'* MLK50: JUSTICE THROUGH JOURNALISM (July 30, 2021), [https://mlk50.com/2021/07/30/state-sen-katrina-robinson-calls-federal-charges-a-political-and-racist-attack/](https://mlk50.com/2021/07/30/state-sen-katrina-robinson-calls-federal-charges-a-political-and-racist-attack/).  She alleged that the United States "create[d] a crime from what would typically be deemed as common business practices; purposely release[d] false and inflammatory information to the public, and continues to pursue a witch hunt to criminalize and defame me."  *Id.*  And she reiterated her allegation that it is "apparent that the motivation has to be racial or political."  *Id.*

She also referred to her supporters, whom she said started had "Facebook groups to support me," and "emailed me and asked for my court dates so they can be there."  *Id.*  She continued that "there, of course, are people on the other side (Republicans) who only see what the media gives them. I've had to deal with the threats and the harassment and the phone calls and emails and texts. I had to change my number but those are people who don't know me."  *Id.*  And she said that when news about her charges "went viral," there were "all these (attackers)

2

who would send me messages saying they were going to hang me or put me in front of a firing squad, calling me dumb [racial slur] [expletive], telling me I deserve whatever Big Bertha is going to give me in jail." *Id.* The defendant shared the MLK50 interview on her Facebook page. *See* Exhibit 2, Screenshot of Aug. 18, 2021 Facebook Post.

Next, in an August 9, 2021 interview on the "Verbally Effective" podcast, the defendant again discussed her case. Verbally Effective With Ena Esco, *"Servant of the People" w/ Katrina Robinson* (Aug. 9, 2019) (podcast available for download on Apple Podcast and iTunes). During the interview, the defendant asserted that she was entitled to withdraw funds as salary from THI because she owned the business. *Id.* She again alleged racial animus on the part of the United States: "I deserve a salary. But you know uppity black women sometimes don't deserve things that people say they don't deserve." *Id.* She also asserted that she has "been sitting on my hands with my finger to my lips for the past year and a half" before speaking out now, and discussed the alleged negative effects this case has had on her business and THI students. *Id.*

Third, on August 20, 2021, the defendant, accompanied by lead defense counsel, made a televised statement to news media outside the federal courthouse after her report date in this case. The Memphis CBS News affiliate broadcast the statement. Shay Arthur, *Sen. Katrina Robinson appears before judge ahead of scheduled trial, says charges are racially motivated*, (CBS-WREG News video uploaded Aug. 20, 2021 5:48 PM, Updated Aug. 20, 2021 7:23 PM), https://www.wreg.com/news/sen-katrina-robinson-appears-before-judge-ahead-of-scheduled-trial-says-charges-are-racially-motived/. In that statement, the defendant alleged the federal charges were a racially-motivated "attack" from the government. *Id.*

Fourth, on August 26, 2021, the defendant and her lead counsel, seated in the THI boardroom, gave a televised interview to the Memphis NBC News affiliate. Kontji Anthony,

*Tennessee state senator opens up about multi-count federal indictment* (NBC-WMC News video uploaded Aug. 26, 2021 9:58 PM), https://www.actionnews5.com/2021/08/27/tennessee-state-senator-opens-up-about-multi-count-federal-indictment/.  In that interview, the defendant made the following statements alleging racial and political motives for the instant prosecution and contesting specific facts of the case:

- The defendant said she had "been silent for a long time," but now wanted to share her side of things before a jury hears the case against her.  *Id.*

- She added, "now that we're getting closer to my exoneration I want to make sure people understand what that journey has been like."  *Id.*

- The defendant contested the "anonymous tip" that started the investigation in her case, saying it did not "make sense" to her.  *Id.*

- Through her counsel, the defendant discussed the defense she apparently plans to raise (and which the United States has moved to limit[1]): that it was not possible to steal from herself because "[a]s a sole owner of [THI], Ms. Robinson is able to enjoy or take those profits, and she was authorized to do everything that she did."  *Id.*

- Defense counsel also contended (wrongfully – *see* ECF #117 and 119) that the federal grant did not limit how the defendant could spend the money she received.  *Id.*

- The defendant asserted, "I don't feel like I would be prosecuted if I were not a black woman.  If I had not done what I've done as far as making a way for myself and others, pulling myself up by my bootstraps… but also supported our community, I don't feel like I would have been in this position."  *Id.*

- The defendant also accused the government of stealing from her business and hurting THI's students.  She said, "I'm charged with… stealing from this business…. when really, the government has stolen from this business.  Our students lost all tuition support … before even an indictment was made because of the way the government sensationalized this."  *Id.*

In addition to these print and broadcast media statements, the defendant has used her

---

[1] *See* ECF # 104, United States' Motion in Limine.

social media to further her narrative alleging a racially- and politically-motivated, improper prosecution. For example, on August 18, 2020, the defendant shared an extremely racist and explicit harassing voicemail that she had received to her Facebook page with the following caption: "Just thought I'd share the kind of voicemails and inboxes I get from the allies of people who want to drag down black women in power by abusing the justice system… It's not a game. There are 100s more.  Here's a sample."  Exhibit 3, Katrina Robinson ("Ktrna Rbnsn") FACEBOOK (Aug. 18, 2021 7:19 PM).[2]  And on August 19, 2020, the defendant posted a question on her Facebook page asking, "As you understand it, what does the term 'prosecutorial misconduct' mean?"  Exhibit 4, Katrina Robinson ("Ktrna Rbnsn") FACEBOOK (Aug. 19, 2021 5:30 PM).

The defendant's supporters also have become more active and vocal about the case as trial approaches. Some of those supporters have begun threatening to disrupt the trial itself.  The defendant has given those supporters a platform on her Facebook page by re-posting these types of messages. For example, on August 2, 2021, one of the defendant's supporters asked others to come to the courthouse for the September 13 trial and to "shut the entire city down that week!" Exhibit 5, Katrina Robinson ("Ktrna Rbnsn") FACEBOOK (reposting Aug. 2, 2021 post).  The defendant re-posted that message on her Facebook page.  *Id.*

Other supporters have created a website where individuals are asked to sign up to "pack that courtroom" at the defendant's trial, which the website contends is motivated by a desire to "usurp[] black power through marring black leaders reputation and destroying their influence." *We Love Katrina Robinson*, https://lovekatrina.com (last accessed Aug. 30, 2021). That website also includes statements attesting to the defendant's character and integrity. *Id.* The same group

---

[2] The government will provide the Court with a copy of the recording upon request.

paid for a billboard on Interstate 55 directing people to the support website; the defendant posted about both the group and the billboard on her Facebook page and encouraged her supporters to visit the website.  Exhibit 6, Katrina Robinson ("Ktrna Rbnsn"), FACEBOOK (Aug. 2, 2021 3:02 PM); *see also* Sam Stockard, *Stockard on the Stump: Sen. Robinson finds support in Memphis billboards*, TENNESSEE LOOKOUT (Aug. 6, 2021 5:00 AM),

https://tennesseelookout.com/2021/08/06/stockard-on-the-stump-sen-robinson-finds-support-in-memphis-billboards/.

## II. ARGUMENT AND AUTHORITIES

The defendant is a public figure and political representative from Shelby County. She is trying her case in the local Memphis media and making inflammatory remarks on the eve of trial. Her actions threaten to taint the jury pool, particularly in Shelby County, and to inflame her supporters into creating a circus-like atmosphere that could intimidate prospective jurors and affect the fairness of this trial. The United States thus asks this Court to exercise its discretion to move this trial to the federal courthouse in Jackson, Tennessee, within the Eastern Division of this district. Alternatively, the Court should exclude Shelby County residents from the jury pool. The United States makes this unusual request only because it is concerned about ensuring a fair, orderly trial and an impartial jury.

**A.  The district court should move the trial to the Eastern Division of the Western District of Tennessee.**

      **1.  District courts have discretion to move the place of trial within the district.**

The Sixth Circuit reviews district courts' decisions transferring a case to another division within the same district for abuse of discretion. *United States v. Ford*, 958 F.2d 372, 1992 WL 39131 at \*6-\*7 (6th Cir. 1992) (Table) (affirming district court's intra-district transfer of case from Western Division of the Western District of Tennessee to the Eastern Division for jury

selection phase of trial); *see generally Skilling v. United States*, 561 U.S. 358, 378 n.11 (2011) ("District-court calls on the necessity of transfer are granted a healthy measure of appellate-court respect.") (citations omitted).

Rule 18 of the Federal Rules of Criminal Procedure governs transfers to another division within the same judicial district. *See Ford*, 1992 WL 39131 at *6-*7; Fed. R. Crim. P. 21(a), 1966 Committee Note ("Transfers within the district to avoid prejudice will be within the power of the judge to fix the place of trial as provided in the amendments to Rule 18."). Rule 18 and the Sixth Amendment "require only that a defendant's trial take place in the *district* where the crime was committed." *United States v. Erwin*, 155 F.3d 818, 824 (6th Cir. 1998) (citing U.S. Const. amend VI, Fed. R. Crim. P. 18, and *United States v. Reynolds*, 64 F.3d 292, 296 (7th Cir. 1995)) (emphasis in original); Fed. R. Crim. P. 18 (providing that courts "must set the place of the trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice."). "[T]here is no constitutional or statutory requirement that a defendant's trial take place in a specific courtroom or *division* within a federal judicial district." *Id.* (emphasis in original). The United States' request to transfer this case to the Eastern Division of this district thus is consistent with venue, criminal procedural, and constitutional requirements.

Further, the defendant's interest in being tried at the courthouse nearest to her home does not govern the venue determination. *See, e.g., Platt v. Minn. Mining & Manuf. Co.*, 376 U.S. 240, 245-46 (1964). Rather, "[t]he public has an overriding interest that justice be done in a controversy between the government and individuals and has the right to demand and expect fair trials designed to end in just judgments… The concept of a fair trial applies [to] both the prosecutor and the defense." *United States v. Ford*, 830 F.2d 596, 603 (6th Cir. 1987)

(Krupansky, J., concurring) (quoting *United States v. Tijerina*, 412 F.2d 661, 667 (10th Cir. 1969) and *Wade v. Hunter*, 336 U.S. 684, 689 (1949)); *see also United States v. Ballard*, 280 Fed. App'x 468, 470 (6th Cir. 2008) (noting the "well-settled principle that both the government, as well as the defendant, are entitled to a fair trial"). District courts thus have the power and the responsibility to "take such steps by rule and regulation that will protect their processes from prejudicial outside interferences. Neither prosecutors, counsel for defense, [nor] the accused… should be permitted to frustrate its function." *Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966).

The United States brought this case in the Western Division of this district because that is the nearest courthouse to the crimes charged, and because the defendant's residence and her business both are in Shelby County, Tennessee. But the United States recently became aware of the statements referenced in Section I, above, which the defendant and her counsel made primarily to the Memphis press and on the defendant's Facebook page about the case. These statements are likely to prejudice the potential jury pool for this trial, and to raise a defense that the United States has moved to limit (i.e., contending that the defendant was "profit-taking" and cannot steal from herself). For example, the Tennessee Rules of Professional Conduct prohibit inappropriate extra-judicial statements by attorneys precisely because such statements carry a substantial risk of tainting the jury pool and materially prejudicing the trial. *See* Tenn. R. Prof'l Cond. 3.6.

The United States thus asks the Court to exercise its discretion to move this trial to the Eastern Division of this district because of the defendant's and her attorney's extra-judicial, prejudicial statements to the media and the risk of defendant's supporters creating a circus-like atmosphere around the courthouse in Memphis. This request is supported by relevant case law, and is preferable to restricting the defendant's speech. *See Ford*, 830 F.2d at 599 (in case

involving politician's inflammatory statements to press, affirming that district courts should "consider a change of venue" to ensure a fair trial before considering restrictions on defendant's speech); *United States v. Blom*, 242 F.3d 799, 804 (8th Cir. 2001) (affirming district court's decision to move trial "from Duluth to Minneapolis" within District of Minnesota as an appropriate "precaution[] designed to assure the selection of an unbiased jury").

> **2.  Rule 21 venue considerations, although not controlling here, support moving the trial to the Eastern Division due to prejudicial pretrial publicity.**

Because the United States seeks only a transfer to another division of this district, not a change of venue to a different district, the standards for a Rule 21 venue transfer due to pretrial publicity do not control here. The United States addresses them here, however, because they favor a finding of presumptive prejudice due to pretrial publicity and thus may help guide the Court's exercise of its discretion here. Under Rule 21 of the Federal Rules of Criminal Procedure, a venue transfer is mandatory "if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." *United States v. Poulsen*, 655 F.3d 492, 506–07 (6th Cir. 2011) (quoting *United States v. Jamieson*, 427 F.3d 394, 412 (6th Cir. 2005) (quoting Fed.R.Crim.P. 21(a)).

Either "presumptive or actual prejudice" can warrant a change in venue. *Id.* (citing *Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007)). "Presumptive prejudice from pretrial publicity occurs where an inflammatory, circus-like atmosphere pervades both the courthouse and the surrounding community." *Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007) (citations omitted). With that principle in mind, courts apply the three-factor analysis articulated in *Skilling v. United States* to resolve a Rule 21 venue-transfer motion alleging presumptive prejudice:

1. Size and characteristics of the community;
2. Nature of the publicity; and
3. Time between the media attention and the trial.

*Skilling v. United States*, 561 U.S. 358, 382-84 (2010); *see also United States v. Lilley*, No. 2:13-CR-20290, 2014 WL 6982431 (W.D. Tenn. Nov. 6, 2014), *report and recommendation adopted* 2014 WL 6982456 (W.D. Tenn. Dec. 8, 2014) (citing *Skilling*, 561 U.S. at 382-84)*.* These three factors favor a finding of presumed prejudice here due to the pretrial publicity promoted by the defendant.

First, the size and characteristics of Shelby County favor transfer, particularly in light of the defendant's position within the county. Unlike, for example, Houston, Texas, Shelby County contains less than one million people. *Cf. Skilling*, 561 U.S. at 382 (declining to find presumptive prejudice where jury pool drawn from greater Houston, a city of more than 4.5 million people); *Shelby County, Tennessee Quick Facts*, United States Census (Aug. 31, 2021), https://www.census.gov/quickfacts/shelbycountytennessee. And while Shelby County might under ordinary circumstances be sufficiently large to avoid presuming prejudice for an ordinary defendant, the defendant in this case is an elected official – one of just five state senators representing Shelby County. *See West Region Senate Districts*, Tennessee General Assembly (Aug. 31, 2021), https://www.capitol.tn.gov/districtmaps/Senatewest.html. She received 42,992 votes in the 2018 election, which represented 100% of the votes in her district. *2018 Election Results Nov. 6, 2018 – Results by County*, TENN. SEC. OF STATE, available at https://sos.tn.gov/elections/results#2018 (last accessed Aug. 31, 2021); *cf. Lilley*, 2014 WL 6982431 at *2 (in child pornography case involving non-public figure, declining to find presumptive prejudice due to size of Shelby County juror pool). Under the specific circumstances of this case, this factor thus favors transfer.

Second, the nature of the publicity in this case favors transfer. Unlike the publicity at issue in *Poulsen* and similar cases, which consisted mainly of fact-based reporting, the local

Memphis media are repeating the defendant's inflammatory accusations of racial and political

animus, among other statements. *Cf. Poulsen,* 655 F.3d at 507 (Pretrial publicity primarily

consisting of fact-based "straight news stories rather than invidious articles which would tend to

arouse ill will and vindictiveness" does not establish presumptive prejudice under Rule 21.)

(quoting *DeLisle v. Rivers*, 161 F.3d 370, 385 (6th Cir. 1998) (internal quotation omitted);

*United States v. Lawson*, 535 F.3d 434, 441 (6th Cir. 2008), as amended (Oct. 9, 2008) (pair of

newspaper articles merely giving background information about charges and defendant were not

"incendiary" and did not "create a circus-like atmosphere"); *Lilley*, 2014 WL 6982431 at *3

(finding "all of the news coverage was based on facts as stated in Lilley's criminal complaint…

and his indictment"). These accusations could inflame and taint the jury pool – particularly

within Shelby County where the defendant has a significant political presence. The defendant

also has encouraged supporters' suggestions to "pack" the courthouse and "shut the city down"

during her trial, neither of which would help this Court conduct an orderly trial with an impartial

jury.  *See* Exhibit 5.

Third, the time between the media attention and trial favors transfer. The defendant

started this media offensive in early August 2021, with the knowledge that her trial begins

September 13, 2021. This timing distinguishes this case from others where courts have declined

to find presumptive prejudice. *See, e.g.*, *United States v. Angelus*, 258 F. App'x 840, 844-45 (6th

Cir. 2007) (declining to find presumptive prejudice where media reports happened four months

before trial, there was no evidence that the coverage resumed after trial began, and there was no

evidence of the "content and tone" of the earlier coverage); *Lilley*, 2014 WL 6982456, at *2

(declining to find presumptive prejudice where the press reports at issue were "over a year old").

Here, by contrast, the defendant's press coverage plainly contains inflammatory content and is

happening on the eve of trial, favoring a finding of presumed prejudice. The *Skilling* factors thus support the United States' request for an intra-district venue transfer here.

For all of these reasons, the United States asks the Court, in its discretion, to move this trial to the Eastern Division of the Western District of Tennessee.

**B.   Alternatively, Shelby County jurors should be excluded from the jury pool.**

If the Court declines to move the trial to the Eastern Division, it alternatively should exclude Shelby County jurors from the jury pool here. The United States makes this request because the statements at issue have been made to the local media, as discussed in Section I above, and because the defendant's constituents reside in Shelby County. It is appropriate for the Court to consider this type of remedy to counter prejudicial pre-trial publicity. *See, e.g., Blom*, 242 F.3d at 804 (finding that to counter pretrial publicity in kidnapping case, district court properly "expand[ed] the area from which the [jury] pool was drawn to the entire State" of Minnesota and excluded the division where the victim was abducted).

This remedy also complies with the constitutional requirement that jurors represent a fair cross-section of the community because "the residents of a particular county are not a 'distinctive group in the community' for Sixth Amendment purposes." *United States v. Watkins*, 691 F.3d 841, 851 (6th Cir. 2012) (citing *Duren v. Missouri,* 439 U.S. 357, 364 (1979) (requiring prima facie showing of systematic exclusion of a distinctive group in order to show a violation of fair-cross-section requirement); *United States v. Conant,* 116 F.Supp.2d 1015, 1024 (E.D.Wis. 2000) ("[E]very court that has looked at the question of whether the residents of a geographic area may constitute a 'distinctive' group... solely due to the location of their residence has answered negatively.")). The United States thus alternatively asks the Court, in its discretion, to exclude Shelby County residents from the jury pool in this case.

12

### III. Conclusion

For the foregoing reasons, the United States thus asks the Court to either transfer this trial to the Eastern Division of the Western District of Tennessee, or alternatively, to exclude Shelby County jurors from the jury pool.

Respectfully submitted,

JOSEPH C. MURPHY, JR.
Acting United States Attorney

By:     /s Christopher E. Cotten
CHRISTOPHER E. COTTEN


/s Scott P. Smith
SCOTT P. SMITH

/s RANEY L. IRWIN
Assistant United States Attorneys
167 N. Main, Suite 800
Memphis, Tennessee 38103
901-544-4231

13

## **CERTIFICATE OF SERVICE**

I, Christopher E. Cotten, Assistant United States Attorney for the Western District of Tennessee, hereby certify that a copy of the foregoing motion has been forwarded to defense counsel of record by the Court's ECF notification system.

On this date September 2, 2021.

/s Christopher E. Cotten
CHRISTOPHER E. COTTEN
Assistant United States Attorney