IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:20-CR-20148-SHL-tmp |
| | ) | |
| KATRINA ROBINSON, | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION FOR RETURN OF PROPERTY SEIZED BY THE GOVERNMENT PURSUANT TO A PRETRIAL SEIZURE WARRANT**

Comes now Katrina Robinson by and through her counsel, Burch, Porter & Johnson, PLLC, and respectfully moves this Court for an Order directing that the United States return to Ms. Robinson items seized by the government pursuant to a federal pretrial seizure warrant. Ms. Robinson's property has remained in possession of the United States since on or about February 20, 2020. The seizure warrant was based on a factual theory that the seized items were "tainted assets" subject to criminal forfeiture. Since the completion of the trial, the facts no longer support the government's allegation as the proof has shown that the specified assets were not connected to the alleged criminal activity. Accordingly, the assets, more fully described below, should be returned forthwith to Katrina Robinson as there is no legal or factual justification supporting the possession or the forfeiture of the assets by the United States.

FACTS

On or about February 20, 2020, the United States pursuant to a pretrial seizure warrant seized numerous assets belonging to Katrina Robinson and/or The Healthcare Institute ("THI"). These assets included a parcel of real property and a retirement account in the name of Katrina Robinson. Ms. Robinson was subsequently indicted by the United States and charged with multiple counts of 18 U.S.C. § 666 and 18 U.S.C. § 1343. The indictment included a notice of criminal forfeiture. The criminal forfeiture notice stated that the forfeiture was based upon charges under 18 U.S.C. § 666 and 18 U.S.C. § 1343. The indictment specifically listed the following items to be seized:

> 2 (b) One parcel of real property located at 4422 Boeingshire Drive, Memphis, Tennessee, with all appurtenances and improvements thereon.
>
> 2 (d) All cash, mutual funds, stock, bonds, securities, and/or financial instruments deposit or credited to accountQ6H-186404 at Waddell & Reed Financial Advisors (6300 Lamar Avenue, P. O. Box 2917, Shawnee Mission, KS), which clears through Pershing LLC, a wholly owned subsidiary of the Bank of New York Mellon Corp.

In addition to seizing the property referenced above, the United States seized from her home and businesses numerous personal items including clothing and electronics. These items remain in possession of the United States.

At trial, the United States was unable to prove the charges of misuse of funds derived from a federal program under 18 U.S.C. § 666 and was likewise unable to prove most of the wire fraud counts under 18 U.S.C. 1343. Specifically, Ms. Robinson was acquitted on the charges that supported the seizure of the specified assets listed in the notice of forfeiture. Count three (18 U.S.C. § 666) and count seven (18 U.S.C. 1343) charged Ms. Robinson of using forty-six thousand one hundred and sixty-three dollars and nine cents of HRSA funds to purchase Boeingshire Drive.

However, Ms. Robinson was acquitted of count three and count seven. Ms. Robinson was likewise acquitted of counts three and count eight which supported the pretrial seizure of her individual investment account at Pershing LLC.

Ms. Robinson purchased the seized assets with profits from THI. Ms. Robinson had complete authority over THI and was free to spend its profits. Ms. Robinson had control of THI as an LLC and THI as a corporation. There were no other owners, board members or beneficial owners. Ms. Robinson made the expenditures with the advice and counsel of her comptroller. The purchases were fully disclosed in subsequent audits performed by outside accounting firms.

Ms. Robinson's counts of convictions are in no way connected to the purchase and/or acquisition of the specified assets. Counts eleven and twelve charged conducts with wedding expenditures in the total sum of three thousand and four hundred and eighty-four dollars. The wedding expenses had no connection to either the retirement account or the purchase of the investment property. Moreover, there was no proof showing that the wedding expenses were actually paid for out of grant funds. In closing argument, the government all but admitted the same as the government argued that the wedding expenses were an "attempt" by Ms. Robinson to use HRSA funds in violation of the wire fraud statute.

Counts 19 and 20 dealt charged wire frauds in relation to 2 APR reports. One was submitted in August of 2018 and the other in August of 2019. These reports had no connection to the specified assets and did not result in any monetary loss to either HRSA or THI. The two HRSA reports were filed after Ms. Robinson received her entire funding under the HRSA grant. HHS Agent Richard Haynes testified that the reports were not used for funding but to inform congress of the demographics of the program administered by Ms. Robinson.

MEMORANDUM

Rule 32.2(b) of the Federal Rules of Criminal Procedure provides that as soon as practical after the verdict finding of guilty . . . on any count of an indictment on which criminal forfeiture is sought, the Court must determine what property is subject to forfeiture under the applicable statute. Rule 32.2 (b)(1)(A) provides that to forfeit property to the United States the Government must establish a "nexus between the count of conviction and the property sought to be forfeited". The court's determination may be based on evidence already in the record. Rule 32.2 (b)(1)(B).

In this case, the Government initially seized property on a theory of misapplication of federal grant funds under 18 U.S.C. § 666 and wire fraud under 18 U.S.C 1343. Ms. Robinson was acquitted of the counts which supported the nexus for both the retirement account and the investment property. Ms. Robinson was acquitted on counts three and seven which supported the seizure of the real property on "4422 BoeingShire Drive, Memphis, Tennessee. Likewise, Ms. Robinson was acquitted on counts three and eight which supported the government's seizure and ultimate theory of forfeiture of Ms. Robinson's "retirement account."

There is no nexus between the crimes of conviction and the property seized by the government. Without the required nexus between the count of conviction and the property, the property must be returned to Ms. Robinson. There simply is no argument, factual or legal, that supports the government's continued possession of un-tainted property. In the lack of the statutorily required connection, the court should direct the government to return property seized pre-trial.

Generally, the four counts of conviction do not support an action for criminal forfeiture. THI is listed in the indictment as the entity to whom the "scheme to defraud to obtain property and money" was committed. However, the APRs in count nineteen and twenty had nothing to do with

THI. The APRs were required reports that were submitted to HRSA after funding had been approved. THI took no action based upon the APRs and neither THI nor HRSA expended funds based on the APR report.

Nor were the number of HRSA scholarships reported on the APRs tied to any prior funding. The funding of the HRSA grant was not tied to the number of scholarships awarded or represented on the APRs. The number of HRSA scholarships did not increase or decrease the amount of funds HRSA provided to THI. Instead, funding was set forth in the "Notice of Awards" with amounts apportioned to specific categories. HRSA in its "Notice of Awards" provided a certain sum for scholarships. The number of Scholarships funded were approximately 100 each year.  It is undisputed that THI and Ms. Robinson exceeded the number of HRSA scholarships awarded.  It is non-sensical for the government to argue that Ms. Robinson falsely increased the number of HRSA scholarships reported to support prior funding.  Ms. Robinson met her educational goals and earned the monies under HRSA. No falsification of data was needed.  Any argument that the monies drawn from the grant were based or tied to the number of scholarships is untrue and a blatant misrepresentation on how HRSA funded recipients under the grant.

As noted, the APRs were required by congress to provide demographic information on the program and **not** to justify expenditures under the grant. The APR reports were not connected to funding and there was no requirement or advantage that scholarships be reported to HRSA to justify prior or future funding. In fact, multiple reports were submitted in support of THI funding including the "Continuation Report" that was required to be filed prior to the awarding of funds for the preceding year. These reports were due in March prior to the "Notice of Awards."  The "Continuation Reports" submitted by Ms. Robinson documented fewer students and less than what was reported on the APRs. The fact that a more accurate and obvious smaller number of students

5

reported to HRSA by Ms. Robinson debunks the theory that Ms. Robinson was intentionally distorting the numbers in the APRs to coverup unearned HRSA scholarships.

More importantly, however, is the fact that there is no evidence that Ms. Robinson fraudulently used HRSA scholarships. The HRSA scholarship information in the APR does not evidence that a HRSA scholarship payment was improperly used. There is no record, document or testimony supporting such a specious theory. Every student file questioned by the government had no record supporting, even an inference, that a HRSA scholarship was drawn. There is no double set of books or accounting records supporting a finding that Ms. Robinson received funds for the student who was incorrectly reported in the APRs. The government wants to argue, without any evidence, that the information in the APRs was true in that scholarship monies were actually paid on students who did not claim a HRSA scholarship in their file, but name appears on the APR report. The paperwork in each of the respective student files accurately reflects that the payment came from other sources. There is no financial record, no THI record, no HRSA record and no witness that can show that a HRSA scholarship was paid to THI for students who were incorrectly reported on the APRs as receiving a scholarship.

It is noteworthy that at trial the government argued a different scheme to defraud under the wire fraud statute based upon a "lulling theory" using the APRs. This theory went away with Ms. Robinson's acquittal on count eighteen which dealt with funding for future years. These shifting theories have prejudiced Ms. Robinson in her ability to defend herself at trial and at sentencing. This eleventh hour criminal liability theory was never charged and never argued to either the jury or to the court.

Finally, the property should be released as the funds are needed by Ms. Robinson to continue the employment of her attorneys. Ms. Robinson is unable to pay her attorney fees without

6

the release of the seized assets. <u>Sila Luis v. United States</u>, 136 S. Ct. 1083 (2016)  Under the Supreme Court's ruling, a defendant is entitled to use untainted seized funds to pay attorney fees. Both the BoeingShire property as well as her retirement account are untainted and can be used as a source to pay for her legal representation.

## CONCLUSION

Ms. Robinson's property has been unfairly and without legal justification taken by the government. The Court should take every step to protect citizens from unlawful governmental retention of property. Robinson has been prejudiced by these seizures including continued expenses, damage to her assets, and diminution of value based upon the property being left unattended.  For the reasons stated above, her improperly seized property needs to be returned forthwith to Ms. Robinson, the rightful owner. The defendant further requests that the numerous individual items taken from her house and businesses be physically returned to a location of her designation. At a minimum - a portion of the property should be released to aid her in paying the attorneys of her choice.

Respectfully submitted,

s/Lawrence J. Laurenzi
Lawrence J. Laurenzi (9529)
L. Mathew Jehl (038251)
BURCH, PORTER & JOHNSON PLLC
180 North Court Avenue
Memphis, TN 38103
Tel: (901) 524-5000
Fax: (901) 524-5024
llaurenzi@bpjlaw.com
mjehl@bpjlaw.com

s/Janika N. White
JANIKA N. WHITE (28355)
THE WALTER BAILEY LAW FIRM
22 North Front Street, Suite 1060
Memphis, Tennessee 38103
(901) 575-8702
Fax: (901) 575-8705
jwhite@walterbaileylaw.com

*Attorneys for Katrina Robinson*

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will operate to provide notice of this filing to all counsel of record in this case.

s/Lawrence J. Laurenzi
Lawrence J. Laurenzi

8